The **STATE OF MINNESOTA et al.,**
Appellees,

v.

**UNITED STATES STEEL CORPORA-
TION et al., Appellants.**

No. 20184.

United States Court of Appeals,
Eighth Circuit.

Feb. 24, 1971.

Robrt A. Albrecht, St. Paul, Minn., for appellants.

Eric R. Miller, Sp. Asst. Atty. Gen., St. Paul, Minn., for appellees.

Before VOGEL, Senior Circuit Judge, MEHAFFY and LAY, Circuit Judges.

LAY, Circuit Judge.

These civil antitrust actions come to us on interlocutory appeal under 28 U.S.C.A. § 1292(b). The suits arise out of an alleged conspiracy to fix prices in the sale of structural steel to plaintiff states for use in bridges on the interstate highway systems.[1] The cases were consolidated as class actions in the District of Minnesota.

In the course of pretrial discovery defendants served on all of the plaintiffs certain interrogatories pertaining to the role of the federal government and its financial involvement with the various states under the Federal-Aid Highway Act, 23 U.S.C.A. ch. 1, by which the federal government assumes up to 90% of highway construction costs. The defendants seek to ascertain the amount of funds made available to the states by the federal government in the construction projects in which structural steel was used.[2] The plaintiffs objected to the interrogatory on the ground that the information sought is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The district court phrased the issue to be "whether the dollar amount of reimbursement by the federal or state government ultimately may be introduced into evidence so as to diminish any recovery" by the plaintiffs. In the leading Supreme Court decision of Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 88 S.Ct. 2224, 20 L. Ed.2d 1231 (1968), this has been characterized as the "passing-on" defense.[3]

In a scholarly opinion found at 299 F. Supp. 596 (D.Minn.1969), the district

---

1. The states involved are Minnesota, North Dakota, South Dakota and Wisconsin. The alleged conspiracy covers 5,000 to 6,000 transactions from 1949 to 1961. These suits are the aftermath of criminal prosecutions of defendants by the United States, which prosecutions were terminated with the acceptance of *nolo contendere* pleas on September 16, 1964.

2. Defendants propounded Interrogatory No. 6 which reads as follows:

   "Whether any governmental or other entity other than the claimant paid the claimant or the agency or department of the claimant which awarded the purchase contract in whole or in part for the construction of said project or structure or any part thereof, and if so:

   "(a) The identification of such governmental or other entity.

   "(b) The date of the commitment by such governmental or other entity to the claimant or the agency or department of the claimant to make such payment.

   "(c) The amount and date of each payment and the total amount of such payments. If this information is not presently available, then the basis for computing the total amount paid.

   "(d) Whether such commitment covered less than the entire project or structure, and if so, the description of that part of the project or structure covered thereby.

   "(e) The identification of each document relating to any such commitment or payments."

   There is indication within the briefs that under such grants the federal government will be reimbursed any amounts collected.

3. Under the circumstances and consideration involved in that case, the Court rejected the passing-on defense. However, the Court carved out an exception which the defendants seek to apply in this case:

   "We recognize that there might be situations—for instance, when an overcharged buyer has a pre-existing 'cost-plus' contract, thus making it easy to prove that he has not been damaged—where the considerations requiring that the passing-on defense not be permitted in this case would not be present." 392 U.S. at 494, 88 S.Ct. at 2232.

court held that the interrogatory requires information that is not relevant as a matter of law and sustained the objection. The court held that the passing-on defense must be rejected and that any grant-in-aid received by plaintiffs is immaterial to their claims under the antitrust laws. The defendants then moved for a partial summary judgment and for the issuance of a certificate under 28 U.S.C.A. § 1292(b) for an interlocutory appeal. The district court granted the certificate and overruled the motion for a partial summary judgment. Upon the basis of the trial court's certificate and the preliminary information presented in the petition to this court, we permitted the interlocutory appeal on both the denial of a partial summary judgment and the ruling on the interrogatory.

The motion for partial summary judgment relates only to the case brought by the State of Minnesota. The legislature of Minnesota has established a state grant-in-aid program to assist counties in highway construction. This program is similar in operation to the federal assistance program. Minn.Stat.Ann. §§ 162.01–162.08. In view of the trial court's rejection of the passing-on defense, defendants sought by the motion to eliminate from Minnesota's statement of damages those amounts paid by the state toward the cost of construction of highway bridges by the counties, where the counties have not joined the class as parties plaintiff.[4] The district court denied the motion on the ground that to the extent the state advanced funds to the counties it was injured in its business or property. The defendant steel producers argue that the two rulings of the district court are logically inconsistent, i. e. if legal damage is to be considered only as it applies to the party originally injured, the state should not be allowed to claim a damage originally suffered by the counties. In reply the State of Minnesota argues that the state has a vital interest in constructing a state highway system and that as political subdivisions of the state the counties are its agents. As this question deals with the substantive rights and relations of the parties, we reserve ruling on the district court's denial of the pretrial partial summary judgment. After an extensive review of the present record and the applicable law, however, we reverse the ruling of the trial court in sustaining objection to Interrogatory No. 6 on the limited basis that it may ultimately lead to or in fact may itself constitute relevant evidence.

Both sides have presented excellent briefs on the issues involved. The district court has succinctly summarized the existing case law in a thorough opinion. An equally thorough analysis of the passing-on defense has recently been discussed by Chief Judge Lord in Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., 50 F.R.D. 13 (E.D.Pa.1970). On interlocutory appeal the parties say that the determination of whether the passing-on defense is available in the present context is a question of law. This may ultimately be true, but the difficulty we encounter at this stage of the proceedings is that the evidentiary facts as to what specific damage is alleged to be passed-on is highly probative to that legal resolution. It is generally alleged that the damage involved is the illegally high price for the steel charged by the steel companies. The present record does not demonstrate, however, the extent to which the allegedly illegal prices were passed-on to the claimant states. The record reveals only that the steel

---

4. In its first order, at 44 F.R.D. 559 (D. Minn.1968), the district court set a time limit within which governmental subdivisions could join as plaintiffs under Fed. R.Civ.P. 23. Many failed to timely join and the statute of limitations has run against them. In overruling the motion for partial summary judgment, the district court expressed its intention, in an unreported opinion, to prevent duplication of claims that might arise between the state and the counties. The court limited any future recovery by Minnesota with respect to its county assistance program to amounts actually expended by the state.

companies dealt with and acted as suppliers for *contractors,* who entered into public bidding to construct the bridges and highways for the various states. The amicus brief filed by the State of California asserts that the contracts between the states and contractors were "economically similar" to a "cost-plus" contract. The argument is there made that "it is common knowledge that general contractors make bids to contracting agencies on the basis of the cost of materials plus a labor and profit margin figure." The stipulated facts for appeal, however, reveal a markedly different evidentiary approach. This stipulation reflects:

"After the project has been approved by the federal government, the State of Minnesota, as project owner and through its highway department, invites the submission of bids by general contractors for furnishing all of the numerous materials and performing all of the labor necessary for the construction of the entire project and subsequently awards a *lump sum* general construction contract to a specific general contractor. It is important to note that the general construction contract is not awarded on a *cost plus* basis.

"After the State of Minnesota has awarded the general construction contract for the project, the successful general contractor awards numerous materials contracts and subcontracts to material suppliers and subcontractors covering various items of material and labor necessary for the construction of the project. Specifically, the successful general contractor will award either a materials contract covering the furnishing of structural steel or a subcontract covering the furnishing and erection of structural steel to one of the many structural steel fabricators competing in the Minnesota market." (Emphasis in original.)

The evidentiary details concerning the supply contracts between the steel companies and the contractors and the corresponding construction contracts between the states and the contractors are not in the present record. The extent to which the contractors passed-on any illegal prices to the claimant states is not disclosed. The issues presented here depend on the initial determination as to whether, in light of the principles of *Hanover,* supra, and the earlier cases which preceded it,[5] the damage item could have been asserted only by the contractors or was in fact passed-on by them to the respective states.[6] Decision of the basic questions presented would require us to proceed on the assumption of fact that the damage asserted was passed-on to the states, whereas the stipulated facts for appeal make resolution

5. The issues raised here were first encountered by the Supreme Court in Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241 (1906). This was followed by Southern Pacific Co. v. Darnell-Taenzer Lumber Co., 245 U.S. 531, 38 S.Ct. 186, 62 L.Ed. 451 (1918), where the underlying reasoning of both decisions was discussed. Mr. Justice Holmes stated:

"The only question before us is that at which we have hinted: whether the fact that the plaintiffs were able to pass on the damage that they sustained in the first instance by paying the unreasonable charge, and to collect that amount from the purchasers, prevents their recovering the overpayment from the carriers. The answer is not difficult. The general tendency of the law, in regard to damages at least, is not to go beyond the first step. As it does not attribute remote consequences to a defendant so it holds him liable if proximately the plaintiff has suffered a loss." 245 U.S. at 533–534, 38 S.Ct. at 186.

6. As pointed out in *Hanover*:

"As long as the seller continues to charge the illegal price, he takes from the buyer more than the law allows. At whatever price the buyer sells, the price he pays the seller remains illegally high, and his profits would be greater were his costs lower." 392 U.S. at 489, 88 S.Ct. at 2229.

See also the discussion, 392 U.S. at 491–493, concerning the difficulty of determining the effect of a price change in the "real economic world."

of that matter equivocal at best.[7] On the surface the issue as to whether the states have passed-on the illegal price to the federal government may seem severable, but on close analysis we deem it so interrelated with the issue as to whether the contractors passed-on the damages to the states that we feel the one should not be answered without the other.

Even within a complete factual record the legal issues involved are not simply resolved. The basic problem is overlapped by the considerations of the law of standing, conceivably real party in interest questions,[8] the collateral source doctrine,[9] issues concerning treble as opposed to single damages,[10] causation, the relationship of the state and federal governments under the provisions of the highway grant-in-aid program, as well as a proper interpretation of *Hanover*. We feel that judicial resolution of these complex issues must await the ripe adjudication of the factual context in which they arise.

We have no doubt that determination of the substantive issues of the appeal at this time would be helpful to the district court and all of the parties. As the district court points out, an early determination of the legal question might have the salutary effect of hastening settlement in a case which otherwise promises to be long and expensive. Nevertheless, we feel compelled to rule

in a limited manner at this time by reason of the incomplete interlocutory record available to us. Courts have traditionally been reluctant to grant interlocutory appeals not only because of the lack of finality of the order under review but also because the incomplete factual proof gives few guides for a proper decision. The integrity of the appellate process would be compromised if advisory opinions were rendered on hypotheses which evaporated in the light of full factual development. The legal questions should not be considered in the abstract. There must be precision in proof of fact worthy to serve as the premises essential to balance and weigh the legal issues involved.[11] Upon full review of the record we are satisfied that precision is lacking here. Our analysis leads us to conclude that the issues presented on this appeal are too significant and far-reaching to be decided without the full evidentiary record. These considerations outweigh the desirability of having appellate pretrial advice to enchance settlement purposes.

■ The parties agree that undue effort will not be required to answer Interrogatory No. 6. At this point we cannot say as a matter of law that the answers may not be relevant to the present actions. In the event that the evidence is ruled to be inadmissible at trial, the defendants can make an offer

---

7. Conceivably, the evidence might show that the contractors' bids incorporated estimated prices for the cost of the steel rather than the allegedly illegal prices subsequently charged to the contractor by the companies. Cf. Thos. J. Sheehan Co. v. Crane Co., 418 F.2d 642 (8 Cir. 1969).

8. Cf. Mason-Rust v. Laborers' Int'l Union, 435 F.2d 939 (8 Cir. 1970).

9. Cf. id. (concurring opinion by Judge Lay):
"Collateral source relates to gratuities by volunteers or to reimbursement by reason of a collateral investment previously made by the injured party. The doctrine is not applicable where the plaintiff is reimbursed and by reason of the reimbursement loses his complete interest in the claim, by transfer or otherwise, to his

indemnitor. When this occurs the indemnitor is subrogated to the entire claim and becomes the only real party in interest. [Cases omitted.] To allow the plaintiff to assert the collateral source doctrine under such circumstances could subject a defendant in various situations to multiple claims arising out of the same damage."

10. Private plaintiffs have a cause of action under the antitrust laws for treble damages, 15 U.S.C.A. § 15, whereas the United States may sue only for actual damages, 15 U.S.C.A. § 15a.

11. "The predictable element in it all is what courts have done in response to the stimuli of the facts of the concrete cases before them." Oliphant, "A Return to Stare Decisis," as quoted in W. Rumble, American Legal Realism 161 (1968).

of proof to preserve the items of damage for appellate consideration. In the event the plaintiffs are successful, the evidence would then be available for further consideration by the district court and this court without the necessity of a new trial. For these reasons the interrogatory should be answered.

The order of the district court sustaining objection to Interrogatory No. 6 is vacated and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.