## In re AIRLINE TICKET COMMISSION ANTITRUST LITIGATION.

### Civil No. 95–MD–1058.

United States District Court,
D. Minnesota,
Fourth Division.

March 11, 1996.

Thomas W. Tinkham, Dorsey & Whitney, Minneapolis, MN, Samuel D. Heins, Heins, Mills & Olson, Minneapolis, MN, for Airline Ticket Commission Antitrust Litigation.

## ORDER

ROSENBAUM, District Judge.

Defendants appeal from an Order, issued January 22, 1996, by United States Chief Magistrate Judge Franklin L. Noel. The

Court heard oral argument on February 28, 1996.

## I. Background

This case arises from allegations that defendants, a group of major domestic airlines, conspired to fix airline travel agent commissions by uniformly imposing a "commission cap." The modified commission structure limits travel agents' and agencies' ticket commissions to maximums of $25.00 and $50.00 on one-way and round-trip tickets, respectively.[1] The parties have completed discovery on issues related to defendants' liability under sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2.

On January 16, 1996, Magistrate Noel heard defendants' motion for leave to serve discovery upon absent members of the plaintiff class. Defendants sought damage-related discovery from randomly selected travel agents and agencies regarding: (1) gross and net revenues; (2) domestic base commission revenues; (3) domestic override commission revenues; (4) international commission revenues; (5) cruise and other non-air revenue sources; (6) revenues from service and management fees; and (7) the amount of commission revenues rebated or given back to plaintiffs' clients.[2] By his January 22, 1996, Order, Magistrate Noel denied defendants' discovery request, finding that the information sought was irrelevant. This appeal followed.

## II. Discussion

### A. Standard of Review

■ District courts accord magistrates' discovery orders great deference, setting aside only those portions found to be "clearly erroneous or contrary to law." 28 U.S.C. § 636; D.Minn. LR 72.1(b)(2). Defendants, however, urge the Court to treat Judge Noel's Order not as a discovery order, but as a report and recommendation, subject to de novo review. 28 U.S.C. § 636; D.Minn. LR 72.1(c)(2). Defendants argue the denial of their motion bars presentation of an essential element of their defense. As a result, they ask the Court to consider their motion as substantive rather than procedural, making it dispositive. See 28 U.S.C. § 636(b)(1)(B)–(C); D.Minn. LR 72.1(c)(1).

Although the Court declines to determine whether defendants' motion is dispositive, the Court agrees the January 22, 1996, Order trenches heavily on an aspect of defendants' claimed defense. For this reason, the Court exercises its discretion and reviews the Magistrate's Order de novo.

### B. Defendants' Discovery Request

■ Discovery of absent class members is permissible when the desired information is relevant to an issue in the case. See Transamerican Refining Corp. v. Dravo Corp., 139 F.R.D. 619, 621 (S.D.Tex.1991) (citing cases). Information is relevant when reasonably calculated to lead to admissible evidence. Rule 26(b)(1) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.").

The Magistrate determined that the proper measure of damages, in this horizontal price-fixing case, is the difference between the competitive commission and the allegedly illegal commission plaintiffs claim has resulted from defendants' anti-competitive activity. Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968). The Magistrate found that the information defendants requested is unrelated to this calculation and inadmissible at trial.

Defendants reply that damages must be determined by: (1) establishing the actual compensation travel agents receive with the commission cap in place; (2) establishing the actual compensation agents would have received absent the caps; (3) calculating the difference between these two amounts; and (4) subtracting from this difference the value

---

1. For a more comprehensive recitation of the facts and contentions of the parties, see In re Airline Ticket Comm'n Antitrust Litig., MDL 1058 (D.Minn. Aug. 23, 1995) (denying plaintiffs' motion for preliminary injunction and defendants' motion for summary judgment).

2. Defendants proposed to gather this data by distributing questionnaires to the 12 largest travel agencies in the plaintiff class, and a random sampling of 330 agency locations. Defendants also proposed follow-up depositions of 50 respondents.

of any benefits travel agents have received after the caps were imposed and which, in defendants' view, result from the caps. Defendants further argue that, whether or not the Court accepts their damages theory, the Court must grant their discovery to enable them to make an offer of proof at trial regarding their damages theory, thus preserving the issue for appeal.

The Court, then, must examine whether the Magistrate's Order states the correct measure of damages, and whether *Hanover Shoe* bars admission of the evidence defendants seek. Further, even if the Court determines *Hanover Shoe* bars the evidence, the Court must consider whether the discovery is warranted, or compelled, on any other ground.

### C. *Analysis*

 Damage calculation in an antitrust case is seldom simple. On one hand, the United States Supreme Court has clearly rejected automatic damages awards in antitrust suits: "To recover treble damages, ... a plaintiff must make some showing of actual injury attributable to something the antitrust laws were designed to prevent." *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 562, 101 S.Ct. 1923, 1927, 68 L.Ed.2d 442 (1981). Thus, "mere violation" of antitrust laws does not, in itself, engender a damage award. *Id.* On the other hand, the Supreme Court has expressly and repeatedly rejected the "pass-on" defense:

> [A]n antitrust defendant [may] not relieve itself of its obligation to pay damages resulting from overcharges to a direct-purchaser plaintiff by showing that the plaintiff [has] passed the amount of the overcharge on to its own customers.

*Blue Shield of Virginia v. McCready*, 457 U.S. 465, 474, 102 S.Ct. 2540, 2545–46, 73 L.Ed.2d 149 (1982) (construing *Hanover Shoe*). Thus, where a direct purchaser passes on overcharges to its customers, "damages are established by the amount of the overcharge," regardless of "whether the victim of the overcharge has partially recouped its loss in some other way." *Hawaii v. Standard Oil Co. of Calif.*, 405 U.S. 251, 262 n. 14, 92 S.Ct. 885, 891 n. 14, 31 L.Ed.2d

184 (1972) (citing *Hanover Shoe*, 392 U.S. at 489, 88 S.Ct. at 2228–29).

Despite *Standard Oil*, defendants argue damages cannot be calculated by simply subtracting commissions paid following imposition of the cap from commissions that would have been paid absent the cap. They argue such a calculation is simplistic, at odds with antitrust principles, and affords a windfall to the plaintiffs. *See Pierce v. Ramsey Winch Co.*, 753 F.2d 416, 434–35 (5th Cir.1985) (stating that "[a]n overly lax standard [for measuring damages] ... would provide antitrust plaintiffs with a windfall and would violate the established principle that an injury without damage creates no right to compensation"). Defendants contend plaintiffs must mitigate their damages and claim they may subtract benefits plaintiffs received as a result of the changed compensation regime from any damages award.

 It is true that, in general, an antitrust plaintiff has a duty to mitigate or offset its damages. *See, e.g., Fishman v. Estate of Wirtz*, 807 F.2d 520, 558 (7th Cir.1986). But the applicable mitigation or offset varies with the facts of each case. *See Fishman*, 807 F.2d at 556–67 (discussing a "refusal to deal" case and stating that, *"under facts like the ones in this case,"* antitrust damages may be offset") (emphasis added); *Pierce*, 753 F.2d at 436 ("It is clear ... that an antitrust plaintiff's post-violation successes do not *necessarily* preclude compensation for damages proximately caused by an antitrust violation.") (emphasis added); *Malcolm v. Marathon Oil Co.*, 642 F.2d 845, 863 (5th Cir.) (discussing a "refusal to deal" case and stating that, *"[i]n such a case,"* mitigation is required) (emphasis added), *cert. denied*, 454 U.S. 1125, 102 S.Ct. 975, 71 L.Ed.2d 113 (1981). In a horizontal price-fixing case, however, mitigation and offset generally do not affect the ultimate measure of damages. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745–46, 97 S.Ct. 2061, 2074–75, 52 L.Ed.2d 707 (1977) (adhering to the *Hanover Shoe* rule, "under which direct purchasers ... are permitted to recover the full amount of the overcharge").

 ] Limited exceptions to the *Hanover Shoe* rule exist. An overcharged buyer may, for example, be party to "a pre-existing 'cost-plus' contract." *Hanover Shoe,* 392 U.S. at 494, 88 S.Ct. at 2232. Or, a buyer may save, and have offset, capital expenses it would have incurred but for the overcharge. *Id.* at 504, 88 S.Ct. at 2237. The Supreme Court crafted these exceptions for situations in which "it [is] easy to prove that [the plaintiff] has not been damaged." *Id.* at 494, 88 S.Ct. at 2232. The Court concludes this case does not present such a situation and, as such, finds defendants' requested discovery lies beyond the exceptions to *Hanover Shoe*'s exclusionary rule.

For example, defendants seek information concerning agency revenues from cruises, other non-air programs, and service and management fees. It appears defendants wish to show plaintiffs have escaped financial injury because they secured alternative revenue following the commission cap. Defendants, however, may not establish an absence of antitrust injury simply by showing plaintiffs secured alternative revenue sources. Rather, defendants must show that, but for the commission cap, plaintiffs would never have been able to secure such alternative revenue. Defendants' theory was explicitly rejected in *Hanover Shoe:*

> Even if it could be shown that the [plaintiff] raised his price in response to, and in the amount of, the overcharge and that his margin of profit and total sales had not thereafter declined, there would remain the nearly insuperable difficulty of demonstrating that the particular plaintiff could not or would not have raised his prices absent the overcharge or maintained the higher price had the overcharge been discontinued.

*Hanover Shoe,* 392 U.S. at 493, 88 S.Ct. at 2231.

The Court is not blind to defendants' concern that barring evidence of mitigation or offset may result in a windfall to plaintiffs. This risk, however, inheres in *Hanover Shoe.* As the United States Court of Appeals for the Ninth Circuit observed in a case similar to this:

> Allowing [plaintiff] to sue for the full overcharge ... creates the possibility that [plaintiff] might recover an amount, trebled, that exceeds its actual damages.... But this is no more than was approved in *Hanover Shoe,* where the plaintiff was allowed to recover its "full" damages even though it "mitigated" its damages by passing part of the excessive costs to its customers. *Hanover Shoe* teaches that in such situations there is nothing wrong with the plaintiff winning a windfall gain....

*Royal Printing Co. v. Kimberly–Clark Corp.,* 621 F.2d 323, 327 (9th Cir.1980). The same reasoning applies here. Thus, the Court concludes Judge Noel correctly set forth the law regarding damage calculation and adopts the conclusions of law set forth in the January 22, 1996, Order.

 Notwithstanding the Court's adoption of the Magistrate's conclusions of law, the Court is constrained to allow, under defined conditions, a portion of the defendants' discovery request. This is because the requested discovery touches on "significant and far-reaching" issues, and in such case a court may, in its discretion, permit discovery. *See State of Minnesota v. United States Steel Corp.,* 438 F.2d 1380, 1384–85 (8th Cir.1971). By permitting discovery in such cases, the court assures that the party seeking discovery is able to "make an offer of proof to preserve the [issues] for appellate consideration." *Id.* Therefore, if only as a prophylactic, the Court will allow defendants to gather evidence to support an offer of proof and possible appeal on a damages issue.

 An allowance of leave to take limited damages discovery does not, however, mean every aspect of the request will be permitted. A large portion of the information sought is firmly in the hands of the defendants, themselves. *See, e.g.,* Fed.R.Civ.P. 26(b)(2) (limiting discovery "obtainable from some other source that is more convenient, less burdensome, or less expensive"). Defendants' counsel acknowledged at oral argument that defendants presently possess information concerning gross commissions paid, domestic override commission revenues, and international commission revenues. Further inquiry into these areas is unneces-

288

sary. On the other hand, defendants may inquire as to the breakdown of revenues among individual agents and agencies. They may also examine arrangements under which agents or agencies remit commissions to individuals, groups, or travel purchaser combines.[3]

Discovery regarding cruise and other non-air revenue sources, as well as revenues from service and management fees, will be permitted. Defendants claim they need this information solely to show plaintiffs were not harmed by the commission cap because, in response to its imposition, the plaintiffs secured alternative revenue sources. Such a defense is most problematic in light of *Hanover Shoe*. At the same time, it is safe to say, defendants are not thoroughly convinced *Hanover Shoe* governs this case.

 Finally, discovery regarding commission transfers appears to be irrelevant on its face. Such information seems only to relate to a "passing on" defense, which the Court has determined defendants are unable to assert. But the information may also establish the existence of "cost-plus" contracts, discussed in *Hanover Shoe*. Again, in the interest of allowing defendants to establish an evidentiary record, the Court will permit this discovery.

Defendants may conduct their proposed travel agent survey, but may not, at this time, conduct follow-up depositions of survey respondents. Proper statistical methodology should provide the material needed and minimize time-consuming, expensive, and repetitive inquiry.[4] The Court is confident counsel, using this guidance, can craft an appropriate survey instrument.

Considering the unusual, and most conjectural, nature of the defendants' need for the requested discovery, the Court determines it appropriate for defendants to bear 75 percent of the costs and attorneys' fees incurred by the plaintiff class in producing the requested discovery. If the proffered discovery is rejected both at trial and on appeal, the Court may also consider assessing defendants with the remaining 25 percent of the plaintiffs' survey cost.

Accordingly, IT IS ORDERED that:

Defendants' motion for leave to take discovery of absent members of the plaintiff class is granted, in part. Defendants may conduct their proposed survey of non-named-party travel agents and agencies, as provided herein, with 75 percent of the plaintiffs' costs and fees to be borne by defendants.

---

3. At oral argument, defendants suggested they may bring motions to decertify or striate the plaintiff class on damage issues; the requested information could, conceivably, support such a motion. The Court, of course, offers no opinion as to the probability of such an effort or its likely outcome.

4. Should conditions change, or more specific concerns be raised, the parties may approach the Court for further consideration of the requested follow-up depositions.