CARLO C. GELARDI CORP., a New
Jersey Corporation

v.

MILLER BREWING COMPANY, a
Wisconsin Corporation, et al.

Civ. A. No. 76–824.

United States District Court,
D. New Jersey.

May 27, 1976.

See also D.C., 421 F.Supp. 237.

James R. Heaney, Madison, N. J., for plaintiff.

J. Nicholas Suhr, Holmdel, N. J., Edward F. Butler, Conboy, Hewitt, O'Brien & Boardman, New York City, for defendants.

BARLOW, District Judge.

OPINION

This action was commenced by the plaintiff, Carlo C. Gelardi Corp., on May 5th, 1976, alleging violations of certain provisions of the antitrust laws of the United

States by the defendant Miller Brewing Company, three employees of Miller, and an unspecified number of unidentified co-conspirators. The complaint also alleges that Miller breached a distributorship contract with the plaintiff. On May 7th, 1976, the plaintiff filed an amended complaint alleging violations of the New Jersey Franchise Practices Act (Act), N.J.Stat.Ann. § 56:10–1, *et seq.*

On May 7th, 1976, this Court signed an order to show cause and entered an order temporarily restraining Miller from discontinuing the sale of beer products to the plaintiff. A hearing was held on May 17th, 1976, at which time the parties were given the opportunity to present evidence relevant to whether a preliminary injunction should issue directing Miller to comply with the notice provisions of the Act, *id.* § 56:10–5. At the hearing and in its briefs, Miller questioned whether its relationship with the plaintiff constituted a "franchise" within the meaning of the Act. The Court extended the temporary restraining order for another ten days, pending determination of the motion for a preliminary injunction.

The Act defines a "franchise" as

"a written arrangement for a definite or indefinite period, in which a person grants to another person a license to use a trade name, trade mark, service mark, or related characteristics, and in which there is a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement, or otherwise."

*Id.* § 56:10–3(a). The Act, however, does not apply to all franchises:

"This act applies only to a franchise (1) the performance of which contemplates or requires the franchisee to establish or maintain a place of business within the State of New Jersey, (2) where gross sales of products or services between the franchisor and franchisee covered by such franchise shall have exceeded $35,000.00 for the 12 months next preceding the institution of suit pursuant to this act, and (3) where more than 20% of the franchisee's gross sales are intended to be or are derived from such franchise."

*Id.* § 56:10–4.

The thrust of Miller's argument is that the distributorship contract involved in this case does not contemplate or require the plaintiff to establish or maintain a "place of business" within the meaning of the Act. The Act defines "place of business" as

"a fixed geographical location at which the franchisee displays for sale and sells the franchisor's goods . . . . Place of business shall not mean an office, a warehouse, a place of storage, a residence or a vehicle."

*Id.* § 56:10–3(f).

It is clear that the performance of the distributorship contract contemplates or requires the establishment or maintenance of much more than "an office" or "a warehouse" or "a place of storage". *See, e. g.,* Distributorship Agreement ¶ 2. Thus, this case does not involve one of the explicit exceptions set forth in the second sentence of § 56:10–3(f),[1] and Miller's argument

---

1. The parties have submitted materials from the available files on the history of the Act. The legislative files are silent as to the meaning of § 56:10–3(f), but there are two memoranda, prepared in the office of the Counsel to the Governor, containing references to the second sentence of this section. Miller cites these documents as evidence of a legislative intent to exclude alcoholic beverage distributors from the coverage of the Act. Miller argues that this "legislative history" indicates that the Act should not be applied to the plaintiff, even if the plaintiff's operations fall within the literal terms of the statute.

Courts ordinarily do not resort to legislative history unless some ambiguity appears on the face of the statute being interpreted. Here, even assuming that § 56:10–3(f) is ambiguous, this Court does not find the materials submitted by the parties helpful because they contain no clear indication of the *legislative* intent with respect to the liquor industry. Whatever meaning one assigns to the two memoranda from the Governor's office, they do not convince this Court that the second sentence of § 56:10–3(f) was intended to exclude particular industries or substantial operations like those of the plaintiff from the protection of the Act. This is especially so when one considers the strong public policy in favor of protection expressed by the Act. *See Shell Oil Co. v. Marinello,* 63 N.J. 402, 409, 307 A.2d 598, 602

must fail unless the plaintiff's facilities do not satisfy the general definition of "place of business".

■ Since it is beyond dispute that the plaintiff in fact sold Miller products from a fixed geographical location in Somerville, New Jersey, and there is also credible testimony to the effect that Miller products were displayed for sale at that facility,[2] the crucial question is whether these things were contemplated or required by the distributorship contract. In this regard, the following passages from that contract are significant:

" . . . Distributor undertakes to market and promote actively and aggressively the sale of Miller beer to retailers and other persons in Distributor's Area to whom Distributor is legally authorized to sell beer . . . ."

*See* Distributorship Agreement, "Purpose of Agreement".

"Beer sold to Distributor hereunder shall be sold for resale by Distributor to retailers and other persons to whom Distributor is duly licensed to sell beer."

*Id.* ¶ 1(a).

"Within ten (10) days following the termination of this Agreement Distributor will return to Miller . . . any and all property belonging to Miller, includ-

ing, but not limited to, . . . signs . . . ."

*Id.* ¶ 1(g).

"During the term of this Agreement Distributor shall aggressively market and sell Miller beer in Distributor's Area; . . . distribute in Distributor's Area a full line of the containers (bottles, cans, kegs, and other packages) Miller uses in the packaging of Miller beer which Distributor may from time to time be requested by Miller to market; keep Distributor's place of business open for business during customary business hours on customary business days and provide regular deliveries of Miller beer to retailers and other persons to whom Distributor is legally authorized to sell beer in Distributor's Area; maintain in the warehouse described in the Distributor Data Sheet or another warehouse suitable for such purpose and approved by Miller an inventory of Miller beer adequate properly to service the needs of beer retailers and consumers in Distributor's Area; maintain an appropriate sales and delivery force, a proper system, approved by Miller, for recording orders, deliveries and other pertinent matters helpful in the marketing of Miller beer in Distributor's Area . . . .; where legally permitted to do so, display at Distributor's expense

(1973), *cert. denied*, 415 U.S. 920, 94 S.Ct. 1421, 39 L.Ed.2d 475 (1974). If the legislature had intended to exclude certain industries from the benefits of the Act, it would have done so in terms much more explicit than those contained in the second sentence of § 56:10–3(f).

**2.** It is not clear exactly what is required by the "displays for sale and sells" language in § 56:10–3(f). This language is especially troublesome when the franchisee is, like the plaintiff in this case, a wholesaler—"a merchant middleman who sells chiefly to retailers, other merchants, or industrial, institutional, and commercial users mainly for resale or business use", *see Webster's New Collegiate Dictionary* (1975). Since wholesalers are in the business of "selling . . . to retailers or jobbers rather than consumers", *see Webster's New International Dictionary* (2d ed. 1961), they generally have no need to display products for sale. Thus, the "displays for sale and sells" language, if considered by itself, would indicate that the Act was not intended to cover fran-

chisees who are wholesalers. *See generally,* Annot., 67 A.L.R.3d 1299, 1324–5 (1975); Annot., 59 A.L.R.3d 244, 249 (1974).

However, § 56:10–3(a) explicitly states that the Act covers the wholesale situation. Therefore, the "displays for sale and sells" language should not be construed so as to eliminate most franchisee-wholesalers from the protection of the Act. That language should require of a franchisee-wholesaler no more than that his business operations reflect the normal characteristics of a wholesale business.

This Court finds that the plaintiff's wholesale operations satisfy the above interpretation of § 56:10–3(f). However, this finding is not necessary because the Court has also found as a fact that some Miller products were displayed for sale at the plaintiff's Somerville facility. Although the display may never have brought about any sales and was rather insignificant, due to the nature of the plaintiff's business, it was sufficient to satisfy a more retail-oriented interpretation of § 56:10–3(f).

in a conspicuous place visible from the exterior of Distributor's place of business, a type of sign recommended by Miller which sign shall, if Miller requests, be equally as prominent as the sign of any other product which Distributor may also sell  .  .  .  ."

*Id.* ¶ 2.

"Distributor is hereby granted the non-exclusive privilege of displaying [Miller's] trademarks and service marks in connection with the sale or offering for sale of Miller beer  .  .  .  ."

*Id.* ¶ 12(b).

"If any such mark  .  .  .  is used by Distributor in signs, advertising or in any other manner Distributor will upon termination of this Agreement, immediately discontinue, at Distributor's own expense, all such use and display thereof."

*Id.* ¶ 12(c).

■ It is clear from the provisions quoted above that the plaintiff's practice of displaying for sale and selling Miller products at the Somerville facility was well within the scope of the activities contemplated by the distributorship contract. In fact, had plaintiff not maintained such a practice, Miller might well have had grounds to question plaintiff's compliance with the contract.

Thus, it appears that the plaintiff has a reasonable probability of eventual success on the merits with respect to the applicability of the Act. The Court must now consider whether the plaintiff would suffer irreparable injury if relief is not granted to prevent a change in the status quo. *See Oburn v. Shapp,* 521 F.2d 142, 147 (3d Cir. 1975); *Delaware River Port Authority v. Transamerican Trailer Transp., Inc.,* 501 F.2d 917, 919–20 (3d Cir. 1974); *Winkleman v. New York Stock Exch.,* 445 F.2d 786, 789 (3d Cir. 1971).

■ This Court finds that the loss of business and good will, and the threatened loss of the enterprise itself, constitute irreparable injury to the plaintiff sufficient to justify the issuance of a preliminary injunction. *See, e. g., Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1205 (2d Cir. 1970); *Interphoto Corp. v. Minolta Corp.,* 417 F.2d 621, 622 (2d Cir. 1969); *Brennan Petroleum Prods. Co. v. Pasco Petroleum Co.,* 373 F.Supp. 1312, 1316 (D.Ariz.1974); *N.W. Controls, Inc. v. Outboard Marine Corp.,* 317 F.Supp. 698, 703 (D.Del.1970); *cf.* D. Dobbs, *Remedies* § 12.18, at 884–5 (1973). Furthermore, the balance of hardships tips decidedly in favor of the plaintiff's position. The plaintiff would clearly suffer major losses without preliminary relief, since Miller products constitute approximately eighty per cent (80%) of the plaintiff's total sales volume. An injunction, on the other hand, would cause little, if any, harm to Miller. In fact, Miller could be said to benefit insofar as it derived profits from the continued sales to the plaintiff. Certainly the public would benefit from the uninterrupted availability of Miller products. Finally, we must also consider that failure to grant preliminary relief would result in economic hardship for the plaintiff's employees.

In the light of all of the above considerations, this Court will issue a preliminary injunction directing Miller to comply with the sixty-day notice provision of N.J.Stat. Ann. § 56:10–5.[3] The foregoing opinion shall be considered the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a). An appropriate order will be submitted.

---

3. Prior to the hearing on May 17th, 1976, the defendants had intimated that they would argue that the fifteen-day notice provision of § 56:10–5(1) should be applied in this case rather than the more general sixty-day notice provision. However, they seem to have abandoned this position, because it is not mentioned in their briefs and no factual foundation was laid for it on May 17th. In any event, this Court holds that the fifteen-day notice provision is inapplicable. Indeed, it would be somewhat anomalous to hold otherwise, because that provision turns on the franchisee's voluntary abandonment of the franchise, and the very reason for the instant lawsuit is the plaintiff's desire to preserve its franchise.