ABA DISTRIBUTORS, INC., Plaintiff,

v.

ADOLPH COORS COMPANY,
Defendant.

No. 80–0298–CV–W–1.

United States District Court,
W. D. Missouri, W. D.

Sept. 3, 1980.

Harry P. Thomson, Jr., Shughart, Thomson & Kilroy, Kansas City, Mo. for plaintiff.

Kent E. Whittaker, Hillix, Brewer, Hoffhaus & Whittaker, Kansas City, Mo., Leo N. Bradley, Bradley, Campbell & Carney, Golden, Colo., for defendant.

MEMORANDUM AND ORDERS RULING AND DIRECTING FURTHER PROCEEDINGS IN REGARD TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

OLIVER, Chief Judge.

I.

This case pends on plaintiff's motion for preliminary injunction. Plaintiff accurate-

ly summarizes the three main arguments which it presents in support of its pending motion by stating: (A) "Coors' termination of plaintiff violates an outstanding Federal Trade Commission order which specifically prohibits the very conduct in which Coors engaged in attempting to terminate plaintiff;" (B) "Coors' attempted termination of plaintiff was invalid because it was a part of a combination and conspiracy to violate the antitrust laws;" and (C) "Coors' attempted termination of plaintiff was also invalid because it violated the terms of the distributorship agreement between the parties." Plaintiff's motion contends that it is entitled to be reinstated as defendant's distributor pending the trial of plaintiff's entire case on the merits.

We are satisfied that plaintiff's FTC and antitrust arguments do not support plaintiff's claim for the relief prayed for in its motion for preliminary injunction. We shall find and conclude, however, that plaintiff's third claim relating to defendant's alleged violation of the terms of the distributorship agreement and, specifically, the issue of whether the distributorship agreement was validly terminated by defendant Coors' March 21, 1980 letter to plaintiff, should be separated from the remainder of the case pursuant to Rule 42(b) of the Rules of Civil Procedure for separate trial and that trial of that separated issue should be advanced pursuant to Rule 65(a)(2) to the earliest convenient trial date for the Court and counsel for trial on the merits, such date to be established at the pretrial conference which will be ordered at the close of this memorandum opinion. We shall also enter an order directing that the temporary restraining order presently in effect be converted to a preliminary injunction pending the trial of the separated issue on the merits.

## II.

The briefs in support and in opposition to the pending motion show that the parties are in substantial disagreement as to the standard to be applied in determining whether any preliminary injunctive relief should be granted.[1]

Western District of Missouri cases involving preliminary injunction issues have frequently cited and relied upon Professor Wright's comprehensive consideration of preliminary injunctions as stated in 11 Wright & Miller's *Federal Practice and Procedure* § 2947 (Purpose and Scope of Preliminary Injunctions), § 2948 (Grounds for Granting or Denying Preliminary Injunctions); and § 2949 (Procedures on an Application for a Preliminary Injunction).[2]

---

1. Plaintiff initially took the position that under *Fennell v. Butler*, 570 F.2d 263 (8th Cir. 1978), *cert. den.* 437 U.S. 906, 98 S.Ct. 3093, 57 L.Ed.2d 1136 (1978), and the Eighth Circuit progeny of that case, a plaintiff seeking preliminary injunctive relief "is not at present required to make a definitive showing that it would succeed on the merits, but need show only that the issues it has raised concerning the validity of defendant Coors' purported termination will be a 'fair ground' for litigation on the merits." After being requested to comment on *Dataphase Systems, Inc. v. C L Systems, Inc.*, No. 80 1111 (8th Cir. slip op. August 11, 1980), plaintiff suggests that the Eighth Circuit "presently recognizes *two alternate* preliminary injunction tests, the 'traditional' test, as applied in *Dataphase, and* the so-called Second Circuit test . . . adopted in *Fennell.*" Defendant, of course, has consistently argued that plaintiff has not established a right to preliminary injunctive relief under any test.

2. This Court, for example, stated the following in *Morgan v. U.S. Postal Service*, 405 F.Supp. 413, 424 (1975): "The factors to be considered in determining whether equitable relief should be granted include (1) the presence of immediate and irreparable harm to plaintiffs; (2) the probability that plaintiff will succeed on the merits; (3) the harm to defendants should the injunction be granted; and (4) the public interest involved in the grant of preliminary relief. See 11 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2948 at 430 (1973)."

For further example, Judge Hunter in *Paschall v. Kansas City Star Company*, 441 F.Supp. 349, 355 (W.D. Mo. 1977), relied upon Professor Wright's § 2947 to support his conclusion that "the granting or denial of a preliminary injunction is a decision that is required to be exercised in conformity with well-settled and historic equitable considerations. See, 11 Wright & Miller, Federal Practice and Procedure: Civil Section 2947, pp. 423 24 (1973)." Judge Hunter's opinion in *Paschall* was cited

Professor Wright, we believe accurately, noted that "courts use a bewildering variety of formulations" in discussing the various factors to be considered in ruling motions for preliminary injunctive relief. He noted, however, that "although these short–hand formulations aptly express the courts' general reluctance to impose an interim restraint on defendant before the parties' rights have been adjudicated, they do not take the place of a sound evaluation of the factors relevant to granting relief under Rule 65(a)."

Professor Leubsdorf in his comprehensive article *The Standard For Preliminary Injunctions*, 91 Harvard Law Review 525 (January, 1978), indicated his agreement with Professor Wright by stating that "the standards for the exercise of this immense power [to grant preliminary injunctive relief] suffers from inconsistent formulations." *Id.* at 525.[3] Professor Leubsdorf suggests that "this dizzying diversity of formulations, unaccompanied by any explanation for choosing one instead of another, strongly suggests that the phrases used by the courts have little impact on the result in particular cases." *Id.* at 526.

Judge Donald D. Alsop, the district judge who denied preliminary injunctive relief in *Fennell*, recently commented in *Woida v. United States*, 446 F.Supp. 1377, 1383 (D.Minn.1978), that "until recently, the [Eighth Circuit] standard to be met by a party moving for a preliminary injunction was clearly defined." He added, however, that in *Fennell* "the Court of Appeals recently urged this Court to consider the adoption of alternative standards." Judge Alsop's prediction in *Woida* that "the question of the standard to be applied may not have reached its final resolution" has certainly been confirmed by the Eighth Circuit's recent opinions in *Rittmiller* and *Dataphase*.[4]

The various formulations of the standards under which a district court should grant or deny preliminary injunctive relief have been, generally speaking, developed by the various Courts of Appeal and district courts. A review of Notes of Decisions 51 through 70 relating to preliminary, temporary and interlocutory injunctions, collected in 28 U.S.C.A. Rule 65, and the current cumulative annual pocket–part of that vol-

---

with approval by the Eighth Circuit in its recent decision in *Rittmiller v. Blex Oil, Inc.*, 624 F.2d 857, p. 861, fn. 4 (8th Cir. 1980).

3. The "dizzying diversity" of the "inconsistent formulations" were outlined as follows on pages 525 26 of Professor Leubsdorf's excellent article:

> Some authorities do no more than list relevant factors ·typically the plaintiff's likelihood of success on the merits, the prospect of irreparable harm, the comparative hardship to the parties of granting or denying relief, and sometimes the impact of relief on the public interest. Others state combinations of these factors that will warrant relief. Still others lay down a fourfold test, whose folds differ from one formulation to the next. Irreparable injury may or may not be mentioned. Sometimes the injunction must not disserve the public interest, sometimes it must serve the public interest, and sometimes only the equities of the parties count. Some courts insist that the injunction cause no substantial injury to the defendant, while others require only that the harm to the plaintiff from denying the injunction outweigh the defendant's injury. One line of cases requires plaintiff to show a fair question on the merits, another a substantial probability of success, another a reasonable

certainty, and another a clear right. The theory that preliminary relief issues to preserve the status quo, although repeatedly attacked, continues to appear. Even the old chestnut that preliminary injunctions are always prohibitory rather than mandatory, while demonstrably untrue, occasionally emerges.

4. We believe Judge Alsop was also correct in indicating his agreement with Professors Wright and Miller's suggestion in § 2948 at 451 52 that "the verbal differences of the two formulations perhaps do not reflect substantive disagreement." And we further believe that Judge Alsop was correct when he indicated his agreement with Professor Leubsdorf's suggestion that "What is clear is that the moving party must present a *prima facie* case but need not show that he is certain to win, that the degree of likelihood of success is to be considered and balanced with the comparative injuries to be incurred by the parties and that preliminary relief should be denied if the moving party can be granted full relief when the matter is ultimately determined on the merits. *See Leubsdorf, The Standard for Preliminary Injunctions*, 91 Harv.L.Rev. 525 (1978)." *Id.* at 1384, fn. 1.

ume, establishes that until quite recently the Supreme Court has not had any occasion to consider the standard for preliminary injunctive relief.

*Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975), however, one of the recently decided Supreme Court cases, is consistent with the general thrust of other recent Supreme Court cases which emphasize that the principle stated in *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506–7, 79 S.Ct. 948, 954, 3 L.Ed.2d 988 (1959), that the basis for the grant of injunctive relief "in the federal courts has always been irreparable harm and inadequacy of legal remedies," is also applicable for the granting of a preliminary injunction. *Doran* stated:

> The traditional standard for granting a preliminary injunction requires the plaintiff to show that in the absence of its issuance he will suffer irreparable injury and also that he is likely to prevail on the merits. [422 U.S. at 931, 95 S.Ct. at 2568].

See also *Brown v. Chote,* 411 U.S. 452, 456, 93 S.Ct. 1732, 1735, 36 L.Ed.2d 420 (1973), wherein the district court's grant of a preliminary injunction was unanimously affirmed for the reason that:

> In determining whether such relief was required, that court properly addressed itself to two relevant factors: first, the appellee's possibilities of success on the merits; and second, the possibility that irreparable injury would have resulted, absent interlocutory relief. [411 U.S. at 456, 93 S.Ct. at 1735].

We believe that the implications of *Sampson v. Murray,* 415 U.S. 61, 88, 94 S.Ct. 937, 951, 39 L.Ed.2d 166 (1974), may cast doubt upon the validity of a standard which would fail to include a finding of irreparable injury as a prerequisite of a grant of preliminary injunctive relief. It is not necessary for this Court to reach that question for the reason that the Eighth Circuit's discussion of the Second Circuit rule in *Rittmiller* and *Dataphase* makes clear that the Second Circuit standard, as recently changed, does not attempt to eliminate the necessity that a plaintiff seeking preliminary injunctive relief make an appropriate irreparable harm showing before such relief may properly be granted.

In the next part of this memorandum opinion we will discuss the Second Circuit cases cited in *Rittmiller* and *Dataphase* and will state the reasons why plaintiff's antitrust argument, based as it is on cases from the Second Circuit, can not be said to support plaintiff's prayer for preliminary injunctive relief.[5]

### III.

*Rittmiller,* in its discussion of the current Second Circuit standard, appropriately noted that in *Jack Kahn Music v. Baldwin Piano and Organ,* 604 F.2d 755 (2nd Cir. 1979), the Second Circuit suggested that the treble damage remedy available in antitrust litigation was generally adequate to eliminate any threat of irreparable harm to a plaintiff whose claim was primarily based on alleged antitrust violations. On its

---

5. *Dataphase, supra,* compared the Eighth Circuit and the Second Circuit tests as follows: "The traditional test [of the Eighth Circuit] requires that the party seeking the injunction prove a substantial probability of success at trial on the merits of its claims and that it would suffer irreparable injury if injunctive relief were not forthcoming. *A more liberal test* has been promulgated in the Second Circuit. (Emphasis ours). *Sonesta International Hotels Corp. v. Wellington Associates,* 483 F.2d at 247 (2nd Cir. 1973), was quoted in *Dataphase* as an example of the Second Circuit test. That case used language originally used by Judge Jerome Frank in *Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738 (2nd Cir. 1953). It is interest-

ing to note that when Judge Frank wrote his seminal opinion in *Hamilton Watch Co.,* he cited and relied upon many of the early Eighth Circuit opinions which Judge Hunter discussed in detail in *Paschall.*

While the Second Circuit no longer phrases its standard in the language used in *Sonesta International Hotels Corp.,* (see *Jackson Dairy, Inc. v. H. P. Hood & Sons,* 596 F.2d 70 (2nd Cir. 1979), for the current language used to state the Second Circuit formulation of the rule), it is reasonable to believe that the apparent differences between the standard of the Second Circuit and that of the Eighth Circuit have, when properly understood, always been quite minimal.

facts, *Jack Kahn Music* involved a reversal of a district court's grant of preliminary injunctive relief which enjoined the termination of a dealership contract until the final hearing of the antitrust action on the merits. Judge Medina stated in an opening paragraph of his opinion that reversed the district court's grant of relief that:

In recent years there has been developing a substantial body of decisional law affecting a small but important segment of the law relating to the cancellation of retail dealerships by manufacturers. The procedural device employed in this group of cases is the service of a complaint in a private triple–damage antitrust action in which the retailer charges the manufacturer with various violations of the Sherman and Clayton antitrust laws and the simultaneous service of motion papers seeking a preliminary mandatory injunction preventing the manufacturer from cancelling the dealership agreement between the parties until the disposition of the antitrust suit. *Id.* at 757.

The practical result of the granting of preliminary injunctive relief was stated as follows:

As the conclusion of the trial on the merits of the antitrust suit will in the normal course of events in all likelihood not take place for some years, if at all, the granting of such a preliminary mandatory injunction amounts as a practical matter, as here, to freezing plaintiff's revocable and hence temporary dealership into a dealership non–revocable for a substantial period. *Id.*

In discussing the current Second Circuit standard for granting a preliminary injunction, it was stated in *Jack Kahn Music* that:

This Circuit has long provided two alternative tests for the grant of a preliminary injunction. *The tests both require a finding of irreparable injury* and differ regarding the potential for success on the merits which the plaintiff is able to demonstrate at this early stage of the litigation. (Emphasis ours).

Rather than quoting the old Second Circuit rule as stated in *Sonesta International Hotels Corp.*, the following rule, established in 1979 by the Second Circuit's per curiam opinion in *Jackson Dairy*, was quoted in *Jack Kahn Music* as follows:

Preliminary injunctive relief in this Circuit calls for a showing of "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."

*Rittmiller* directed appropriate attention to the impact that the Second Circuit's opinion in *Triebwasser & Katz v. American Telephone & Telegraph Co.*, 535 F.2d 1356 (2nd Cir. 1976), had on the old *Sonesta* test. An even more full explanation of the Second Circuit's recognition of the inadequacy of the *Sonesta* test is contained in Circuit Judge Mulligan's most candid article entitled "*Forward–Preliminary Injunction in the Second Circuit,*" 43 Brooklyn L.Rev. 831 (1977), an article cited with approval in *Jack Kahn Music* and in other Second Circuit cases.[6]

**6.** Judge Mulligan's Brooklyn Law Review article traced the history of the *Sonesta* test from Judge Frank's initial suggestion in *Hamilton Watch Co., id.* at 833, through various later Second Circuit cases which "began to drift away from the requirement of irreparable harm because of a misreading of an earlier opinion," *id.* at 834, to the end that Judge Mulligan concluded that, *id.* at 838: "In short, an examination of the *Sonesta* test shows it to be based upon a cumulative misreading of the traditional standards for a preliminary injunction."

Judge Mulligan stated that the Second Circuit recognized in its 1976 decision in *Trieb-*

*wasser* that "to the extent that the second of the *Sonesta* tests (serious questions plus balance of hardships) can be interpreted not to include a showing of irreparable harm, then, it seems in serious conflict with settled law." We quote that last full paragraph of Judge Mulligan's article because it states the Second Circuit's present rejection of the *Sonesta* test:

It appears that this circuit's derivation of the *Sonesta* test is incorrect to the extent that it would indicate that irreparable harm is not necessary for every preliminary injunction. The appropriate place to announce a more accurate formulation of the rule of this

The primary reason for vacating the preliminary injunction granted by the district court in *Jack Kahn Music* was stated as follows:

> The injuries which Kahn alleges that it will incur on termination of its Baldwin dealership are in every sense ordinary and are compensable in light of the liberal rule for proving damages in antitrust cases. [604 F.2d 759]

■ Every count in plaintiff's second amended complaint based on alleged violations of the antitrust laws contains a prayer for specific money damages. The money damages plaintiff would be able to prove and recover for antitrust violations provide plaintiff with an adequate remedy at law.

We find and conclude in regard to all plaintiff's claims based upon alleged violations of the antitrust laws that the plaintiff has an adequate remedy at law and that plaintiff has not established an appropriate basis for granting preliminary injunctive relief under either the Eighth Circuit or the Second Circuit standard, assuming that the latter standard may be different from the Eighth Circuit and applicable to the circumstances of this case.

### IV.

■ Count IX of plaintiff's second amended complaint alleges that the defendant's purported termination of the distributorship agreement was in violation of the Federal Trade Commission order which was affirmed as modified in *Adolph Coors Co. v. FTC*, 497 F.2d 1178 (10th Cir. 1974). Plaintiff also alleges that the defendant's action in attempting to terminate the distributorship violated the Federal Trade Commission Act. Plaintiff argues that once a valid cease and desist order of the FTC has been entered against a particular party, a private litigant covered by that order has an independent action of enforcement.

While plaintiff expressly states that it is not asking this Court *at this time* to enforce the FTC order, we believe that consideration must be given the question of whether this Court *at any time* has power and jurisdiction to enforce the FTC order entered against defendant Coors.

■ Although *Guernsey v. Rich Plan of the Midwest*, 408 F.Supp. 582 (N.D.Ind. 1976), suggests that a private litigant may have such a right, we do not believe that *Guernsey* accurately states the applicable law. The fact that the legal question presented may be sufficiently serious to make that question a fair ground for litigation is not sufficient to support the granting of a preliminary injunction. We find and conclude that plaintiff's FTC argument does not support plaintiff's prayer for preliminary injunctive relief.

We know of no reason why plaintiff may not at this time proceed independently before the Federal Trade Commission in an effort to have it enforce its order entered in regard to defendant Coors. Should the Commission request this Court's assistance a different question might be presented. Such a question is not now before the Court.

In the next part of this memorandum opinion we will discuss plaintiff's argument

---

circuit is undoubtedly a decision of the court. This has been done this term in *New York v. Nuclear Regulatory Commission*, 550 F.2d 745 (2nd Cir. 1977). In that case, Judge Waterman, writing for the panel, relied heavily on *Triebwasser* in strongly reaffirming that irreparable harm is an essential element of the second *Sonesta* test. *It is no longer open to question in this circuit that when we say that, even absent a showing of probable success on the merits, an injunction can be granted upon a showing of sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary relief, the threat of irreparable harm must always be an element to be established in determining whether the balance tips in favor of the applicant seeking such relief.* This is clearly the rule of the Supreme Court and the other circuits to which reference has been made. Now, it has been explicitly articulated as the governing standard of this circuit. Perhaps, at the present time, this circuit's injunction standards are undergoing a process of reverse evolution that will result in the abandonment of the mutant *Sonesta* formulation and the resurrection of the traditional single four–factor test. (Emphasis ours).

that the defendant's attempted termination was invalid because it violated the terms of the distributorship agreement.

## V.

■ Count XI of plaintiff's second amended complaint is the only count which prays solely for equitable relief. It is also the only count which directly presents the question of the validity of defendant's March 21, 1980 effort to terminate plaintiff's distributorship. The transcript of the hearings held in connection with the pending motion shows that most of the evidence adduced by both sides was directed to the factual circumstances alleged in Count XI.

The factual data already before the Court must be considered in light of the terms of the distributorship agreement executed by the parties. The first sentence of paragraph IX(2) of the Agreement required Coors to notify plaintiff and to specify in writing on what grounds Coors determined that plaintiff was in breach or in default of any term or condition of the Agreement. The second sentence of paragraph IX(2) granted plaintiff a period of ninety days within which to correct any breach or default, "except as provided in paragraph II(1)" of the Agreement. The third sentence of paragraph IX(2) conferred a "right to terminate" on Coors "in the event such Distributor shall fail or refuse to correct such breach or default to Coors' satisfaction within the said time period."

Paragraph II(1) of the Agreement, to which reference was made in the second sentence of paragraph IX(2), provided:

At all times to be aware of and adhere to all local, state, and Federal laws and regulations applicable to Distributor's business pursuant to this Agreement. Violation of said laws and regulations, dishonesty, conduct involving moral turpitude, conviction of a felony, infamous crime, or any Federal crime which is punishable in a Federal penitentiary, revocation, nonrenewal or suspension of Distributor's federal, state or local license or permit, all shall be causes for immediate termination of Distributor at the option of Coors. In such event, Coors shall have the right to make whatever immediate arrangements it deems necessary or expedient to provide for the sale and distribution of Coors beer products in Distributor's area. Any insolvency of Distributor, institution of proceedings in bankruptcy by or against Distributor, receivership or dissolution of Distributor, assignment for benefit of creditors pursuant to insolvency or liquidation by Distributor, shall also be cause for such immediate termination by Coors.

Defendant's letter of March 21, 1980 reads as follows:

Mr. Abe Gustin

President

A.B.A. Distributors, Inc.

1909 Vernon Street

North Kansas City, Mo. 64116

Dear Mr. Gustin:

This letter will confirm our meeting on March 19, 1980, in which you were terminated as a Coors beer distributor effective at the close of business Friday, March 21, 1980.

Our reasons for this action were discussed with you and your counsel on Wednesday and I will not restate those. Primary among those reasons, however, was your dishonesty with us concerning deliveries and sales for resale outside of Missouri. Also, we also believe that as a consequence of those sales you are in violation of state and federal law.

We have sales personnel in Kansas City prepared to work with you so that final settlement of accounts and immediate arrangements for distribution to your accounts can be completed in an orderly and timely manner. Your cooperation would, of course, be appreciated.

Very truly yours,

/s/ Melvin E. Linn

Melvin E. Linn

Vice President

Regional Sales

CC: Mr. Leo Bradley

The first sentence of the March 21, 1980 letter strongly suggests that Coors had ini-

tially acted under the impression that it had power to terminate plaintiff on March 19, 1980 by some method other than by written notice as provided in the Agreement. For it is clear that the first sentence of the March 21, 1980 letter assumed that Coors had already terminated plaintiff on March 19, 1980, two days before the letter was written.

The second sentence of the March 21, 1980 letter suggests that defendant Coors did not consider that it was under any obligation to specify "in writing the grounds constituting such breach or default," as provided in the Agreement. For that sentence of the letter implicitly states that Coors was not under any duty to state in writing what may have been said orally on the preceding Wednesday.

The third and fourth sentences of the March 21, 1980 letter, however, somewhat inconsistently purports to state "dishonesty" and "violation of state and federal law" grounds of termination in an obvious effort to bring the attempted termination within the paragraph II(1) exception, as provided in the second sentence of paragraph IX(2) of the Agreement. If defendant had a valid basis for termination without notice, plaintiff would effectively be deprived of the ninety day correction period established by paragraph IX(2) of the Agreement.

There is no factual dispute about the execution of the Agreement or the fact defendant wrote the March 21, 1980 letter. Other factual circumstances, however, are in dispute and it is appropriate to state how our tentative findings are to be considered under applicable law.

*Rittmiller*, in footnote 6, page 863 of 624 F.2d incorporates the teaching of *Paschall v. Kansas City Star*, 605 F.2d 403, 407 n.12 (8th Cir. 1979), in regard to the tentative nature of factual findings made for purposes of ruling motions for preliminary injunctions. We are required, however, in our evaluation of the substantiality of the probability of plaintiff's success at trial on the merits to make tentative findings and state conclusions of law based on those findings in order to make the required judgment of the likely weight of plaintiff's case on the merits and the nature of the injury plaintiff would suffer if denied preliminary injunctive relief.

Accordingly, and on the basis of the evidence presently before the Court, we find that the factual circumstances as stated in plaintiff's proposed findings of fact 41 to 49, inclusive, and 53 and 54, accurately state the circumstances under which the March 21, 1980 letter was prepared and mailed.[7] We also find and conclude that there is a substantial probability that plaintiff will be able to obtain, on the merits, a conclusion of law which would state that the defendant Coors could validly terminate the distributorship agreement only on the basis of information that was actually available to it at the time it purported to terminate and a conclusion of law which would state that

---

**7.** The findings which we make for present purposes are as follows:

41. On March 21, 1980, a written letter of termination was sent from Coors to ABA to be effective on March 21, 1980.

42. The termination letter was signed by Melvin Linn, Vice President of Regional Sales of Coors.

43. The attempted termination of ABA was based upon information contained in the investigative report of Paul Corbett.

44. Melvin Linn had not read the investigative report by Paul Corbett prior to terminating ABA.

45. Paul Corbett had made an oral report to Leo Bradley, who then reported the conversation to Melvin Linn.

46. Linn relied only upon the representations of Leo Bradley, Coors' counsel in terminating ABA.

47. Neither Melvin Linn nor any other Coors official conducted any investigation of the ABA distributorship other than that contained in the Corbett report.

48. Melvin Linn did not draft the letter of termination sent to ABA.

49. Melvin Linn signed the letter of termination without questioning its contents.

53. At the time of the sending of the termination letter, neither Melvin Linn nor any other Coors official had any knowledge of any violation of state or federal law by ABA.

54. At the time of the sending of the termination letter, neither Melvin Linn nor any other Coors official had any knowledge of actual dishonesty by ABA.

evidence developed *after* the attempted termination cannot be said to relate back to and justify a decision made without the subsequently developed information.

In short, we find and conclude that plaintiff has established a substantial probability of success in being able to have defendant's March 21, 1980 letter of termination set aside as invalid and contrary to the terms of the distributorship Agreement.

## VI.

If successful on the merits, plaintiff would, at the least, be entitled to have the termination attempted in defendant's March 21, 1980 letter set aside as invalid. Paragraph IX(1) of the Agreement conferred the right upon both parties to terminate the Agreement by simply serving a written notice thirty days in advance of termination. It is quite obvious that the defendant did not attempt to utilize that method of termination. Should the attempted March 21, 1980 termination be set aside as invalid, both parties may be presently entitled to proceed under paragraph IX(1) of the Agreement.

It is possible, however, that plaintiff, on the merits, might be held to be entitled to hold the defendant to defendant's election to terminate plaintiff for cause and thus become entitled to an adjudication that defendant be required to serve a new notice of termination under paragraph IX(2). In the event equity might require the defendant to serve a new paragraph IX(2) termination notice, plaintiff might eventually have a right to invoke the broad mandatory arbitration provision of the Agreement as provided in paragraph XV thereof.

Even if it be assumed that the most plaintiff would be entitled to on the merits would be to have the March 21, 1980 notice set aside as invalid, such action would apparently reinstate paragraph VIII of the Agreement which would permit plaintiff to sell his distributorship on terms mutually agreeable to plaintiff and the purchaser, provided defendant Coors would give its approval of the new owner in writing. Should the attempted termination of March 21, 1980 be set aside as invalid on the merits and should defendant thereafter elect to terminate under paragraph IX(1), plaintiff might in that event, acquire rights as provided in paragraph VIII(2). And, in any event, should it be adjudicated that defendant has the right to terminate on thirty days notice, certainly plaintiff would have a thirty day period within which to arrange for an appropriate sale of the distributorship.

We believe that the same caution which requires that factual findings be tentatively made should likewise be exercised in making statements with respect to the final relief to which plaintiff might be entitled on the merits of its claim. Our finding, however, that plaintiff does have a substantial probability of succeeding on its claim of alleged breach of the distributorship agreement, has a direct relationship to the nature of the injury that plaintiff would suffer if injunctive relief were not granted.

*Guinness–Harp Corp. v. Jos. Schlitz Brewing*, 613 F.2d 468 (2nd Cir. 1980), affirmed a grant of a preliminary injunction against the termination of a distributorship and distinguished *Kahn Music Co.* on the ground that the presence of the possibility of arbitration enhanced the risk of irreparable harm and presented a factor in addition to a claim that such termination would violate the antitrust laws. We find and conclude that the same thing is true in this case.

We further find and conclude that much of what Judge Hunter said in Part III–B of *Paschall v. Kansas City Star Co.*, 441 F.Supp. at 357–359, and the cases he cited and discussed in that part of his opinion in regard to irreparable harm, is applicable to this case. Plaintiff in this case, in addition to suffering the type of irreparable injury that Judge Hunter found in *Paschall* would be suffered by the contract carriers of the Kansas City Star, may also be required to suffer the irreparable injury of being deprived of a right to mandatory arbitration.

The specific factual circumstances relevant to the factor of irreparable injury are

accurately stated in plaintiff's proposed findings of fact Nos. 7, 11, 14, 94 to 98, inclusive.[8] The factual situation in this case is quite comparable to the factual situation as found by Judge Hunter in *Paschall.* Judge Hunter relied on and quoted from both Judge Friendly's frequently cited opinion in *Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197 (2 Cir. 1970), and one of Judge Barlow's two opinions in *Carlo C. Gelardi Corp. v. Miller Brew. Co.,* 421 F.Supp. 233 and 237 (D.N.J.1976). We find and conclude that the rationale of both those cases sustains our findings in regard to irreparable injury, just as the rationale of both those cases sustained the like finding made by Judge Hunter in *Paschall.*

Judge Barlow's two opinions in the *Miller Brewing Company* litigation presented a factual and procedural situation quite close to that presented in the case at bar. Miller Brewing Company sent the plaintiff a telegram on May 4, 1976, in which it attempted to terminate its distributor agreement without notice. Plaintiff distributor immediately brought suit on May 5, 1976, alleging antitrust violations, breach of the distributor agreement, and violation of the notice requirements of the New Jersey Franchise Practices Act.

The May 27, 1976 *Miller Brewing Co.* opinion, reported in 421 F.Supp. 233, reflects Judge Barlow's grant of preliminary injunctive relief in the form (1) of a temporary restraining order which (2) was later converted into a preliminary injunction which held the attempted termination invalid and (3) which required Miller Brewing company to give plaintiff the sixty day notice required by the New Jersey Franchise Practices Act.[9]

The second opinion in the *Miller Brewing Company* litigation, filed October 1, 1976 and reported in 421 F.Supp. 237, reflected Judge Barlow's findings and conclusion that the plaintiff distributor was not entitled to further preliminary injunctive relief in re-

**8.** The findings which we make for present purposes are as follows:

7. On or about June 1, 1978, ABA and Coors entered into an Agreement (hereinafter referred to as the "Agreement") whereby ABA was appointed a distributor of Coors beer products to resell Coors beer products in a specified geographical area described in the Agreement. (Tr. 1, p. 2)

11. In order to obtain the Agreement with Coors, ABA was required to have available approximately $1.4 million dollars, which money was made available by ABA and which was expended for capital investments, trucks and equipment, the leasing of warehouse space, and the establishment of accounts and clientele. (Tr. 2, pp. 130–131)

14. ABA has developed a successful and ongoing business in its territory, and has established successful and ongoing business relationships with its customers and potential customers. (Rizzo Depo., p. 7)

94. The attempted termination of ABA by Coors has and would result in the destruction of ABA's business. (Tr. 1, p. 18; Tr. 2, p. 133)

95. The attempted termination of ABA by Coors has and would result in loss of all profits to ABA. (Tr. 1, p. 18; Tr. 2, p. 133)

96. The attempted termination of ABA by Coors has and would result in loss of all goodwill to ABA. (Tr. 1, p. 18)

97. The attempted termination of ABA by Coors has and would result in loss of capital investments by ABA. (Tr. 1, p. 18; Tr. 2, p. 133)

98. The attempted termination of ABA by Coors would eliminate any possibility that ABA could recoup its capital investment. (Tr. 1, p. 18; Tr. 2, p. 133)

**9.** In his first *Miller Brewing Co.* opinion, Judge Barlow applied the Third Circuit standard which is comparable to the traditional Eighth Circuit standard. After finding that "plaintiff has a reasonable probability of eventual success on the merits," Judge Barlow, in reliance upon *Semmes Motors, Inc.,* and many other cases, concluded that "this Court finds that the loss of business and goodwill, and the threatened loss of the enterprise itself, constitute irreparable injury to the plaintiff sufficient to justify the issuance of a preliminary injunction."

It is, of course, obvious that the case at bar presents questions relating to the notice of termination to which plaintiff may be entitled under the Missouri Franchise Act, in addition to the notice to which plaintiff may be entitled under the express provisions of the Agreement of the parties. While plaintiff's claims in regard to the Missouri Franchise Act are alleged in Counts IV and X of plaintiff's second amended complaint, the separation order to be entered pursuant to Rule 42(b) is intended to be broad enough to separate out all claims based on alleged violations of the Missouri Franchise Act.

gard to any of plaintiff's other claims. Judge Barlow denied further preliminary injunctive relief because of plaintiff's failure to demonstrate a reasonable probability of ultimate success on the merits of the various antitrust claims and therefore found it unnecessary to reach the question of irreparable injury.[10] We find and conclude that a like finding could be made in regard to plaintiff's FTC and antitrust arguments made in the case at bar.

We find and conclude that the nature of the irreparable harm involved in this case in regard to defendant's attempted termination of the distributorship is comparable to that which was involved in *Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438 (2 Cir. 1977). That case affirmed the district court's grant of preliminary injunctive relief in a distributorship termination case, as reported in 416 F.Supp. 564 (S.D.N.Y.1976). It must be noted that *Armstrong Cork Co.* was one of the Second Circuit cases which was decided *after Triebwasser & Katz* modified the *Sonesta* test. Indeed, *Armstrong Cork Co.*, as Judge Mulligan noted in footnote 6 of his Brooklyn Law Review article, expressly stated that "[b]oth alternatives of *Sonesta* . . . require that the movant show a threat of irreparable harm." 548 F.2d at 441, n.3.

While we are not at all satisfied that plaintiff, on the merits, would ever be entitled to full reinstatement as a distributor for the defendant on any kind of permanent basis, we are satisfied and specifically find and conclude that the plaintiff has established a substantial probability of obtaining some equitable relief on the merits and that it would suffer irreparable injury within the meaning of the applicable standard if injunctive relief were denied.

## VII.

Professor Leubsdorf accurately stated that the determination of a motion for preliminary injunction involves a "surprisingly complex decision." 91 Harvard L.Rev. at 527. Professor Leubsdorf suggested that the simplest way of avoiding difficulties and injustice that might result from the improper granting of preliminary injunctive relief is to expedite the final hearing pursuant to Rule 65(a)(2). See 91 Harvard L.Rev. at 556. We agree.[11]

---

10. Judge Barlow footnoted his finding and conclusion in the second *Miller Brewing Co.* case that plaintiff had not demonstrated "a reasonable probability of ultimate success on the merits" with the statement that "[g]iven this disposition, it is unnecessary to discuss *the three other factors* that are ordinarily considered upon a motion for preliminary injunction" (emphasis ours). 421 F.Supp. at 249 n.25. It is obvious that Judge Barlow had in mind the four factors listed by Professors Wright and Miller in § 2948 of their work, to which this Court made reference in *Morgan v. United States Postal Service*, 405 F.Supp. at 424.

All four factors were, of course, considered in the first *Miller Brewing Co.* opinion. We quoted Judge Barlow's conclusions in regard to (1) plaintiff's probability of success on the merits and (2) the irreparable harm factor in footnote 9. In regard to two additional factors of (3) hardship and (4) the public interest, the first *Miller Brewing Co.* case held:

Furthermore, the balance of hardships tips decidedly in favor of the plaintiff's position. The plaintiff would clearly suffer major losses without preliminary relief . . . . An injunction, on the other hand, would cause little, if any, harm to Miller. In fact, Miller could be said to benefit insofar as it derived profits from the continued sales to the plaintiff. Certainly, the public would benefit from the uninterrupted availability of Miller products. Finally, we must also consider that failure to grant preliminary relief would result in economic hardship for the plaintiff's employees.

We make the same findings and conclusions in this case in regard to the third and fourth factors, except, of course, we find that Coors', rather than Miller's beer is involved. We recognize that the shorthand formulation stated on the appellate level most frequently includes only two of the factors stated by Professors Wright and Miller. We do not believe, however, that the appellate shorthand statement of only two of the factors was intended or designed to eliminate appropriate district court consideration of all four of the factors stated in § 2948 of Wright and Miller.

This Court intends to continue to give appropriate consideration to all four factors, and perhaps, even other factors relevant in a particular case, until otherwise instructed by a decision of the Supreme Court or by a Court en banc opinion of the Court of Appeals.

11. So do Professors Wright and Miller. They state in Section 2948 that:

Perhaps the single most important prerequisite for the issuance of a preliminary in-

We have concluded that plaintiff may be entitled to injunctive relief on the merits only in connection with defendant's March 21, 1980 attempt to terminate the distributorship agreement. We have a strong feeling that both sides have already adduced all material and relevant evidence available to either side in regard to the quite narrow question of whether defendant's March 21, 1980 letter must be set aside as invalid.

The only certain way, however, to be sure that both sides will have been afforded a full and complete opportunity to adduce any and all available evidence in regard to the merits of that issue is to separate such issue from the remainder of the case, pursuant to Rule 42(b) of the Rules of Civil Procedure and, at the same time, to exercise the power conferred by Rule 65(a)(2) to "order the trial of the [separated] action on the merits to be advanced and consolidated with the hearing of the application.[12]

Appropriate orders will therefore be entered pursuant to Rule 42(b) and Rule 65(a)(2). The case will be set for further pretrial conference in order that the Court have the benefit of the views of the parties in regard to the earliest convenient trial date for the separated issue.

An appropriate order will be entered under which the temporary restraining order heretofore agreed to by the parties will be extended in the form of a preliminary injunction pending the trial of the separated issue on the merits, in order that the present status quo be maintained pending such final determination.[13]

For the reasons stated, it is

ORDERED (1) that Count XI of plaintiff's second amendment complaint and all other portions of that complaint which present the issue of whether the distributorship Agreement between the parties was validly terminated by defendant Coors' March 21, 1980 letter to plaintiff should be and the same is hereby separated pursuant to Rule 42(b) of the Rules of Civil Procedure for separate trial. It is further

ORDERED (2) that the issue above separated should be and the same is hereby advanced for immediate trial on its merits pursuant to Rule 65(a)(2), said trial to be conducted on the earliest convenient date. It is further

ORDERED (3) that the temporary restraining order, the terms of which have heretofore been agreed on by the parties, should be and the same is hereby converted into a preliminary injunction, the same to continue in effect until the issue above separated shall have been tried and decided on its merits. It is further

ORDERED (4) that plaintiff's motion for preliminary injunction, except to the extent relief is granted in the orders above entered, should be and the same is hereby denied. It is further

ORDERED (5) that this case be set for further pretrial conference at the earliest possible convenient date in order that (a) a firm trial date be set for the trial of the issue above separated on its merits; (b) that appropriate consideration may be given defendant's pending motion to modify the agreed terms of the temporary restraining order; (c) that appropriate consideration may be given to the entry of any orders that may need to be entered to afford either party an opportunity to seek appellate review of any of the orders entered above;

junction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered. Only when the threatened harm would impair the court's ability to grant an effective remedy is there really a need for preliminary relief. Therefore, if a trial on the merits can be conducted before the injury would occur there is no need for interlocutory relief.

**12.** The second sentence of Rule 65(a)(2) makes admissible all evidence heretofore received on plaintiff's motion for preliminary injunction so that the trial of the separated issue on the merits can be conveniently and expeditiously conducted.

**13.** *Sampson v. Murray,* 415 U.S. 61, 86, 94 S.Ct. 937, 951, 39 L.Ed.2d 166 (1974), makes clear that "a temporary restraining order continued beyond the time permissible under Rule 65 must be treated as a preliminary injunction, and conform to the standards applicable to preliminary injunctions."

and (d) that appropriate consideration be given to the pretrial orders that should be entered which will permit the expeditious pretrial development of the remainder of the case.