**ABA DISTRIBUTORS, INC., Appellee, Cross-Appellant,**

v.

**ADOLPH COORS COMPANY, Appellant, Cross-Appellee.**

Nos. 80–1938, 80–1974.

United States Court of Appeals, Eighth Circuit.

Submitted March 10, 1981.

Decided Oct. 16, 1981.

Rehearing Denied Nov. 9, 1981.

---

when Coors gave ABA notice of termination of the distributorship. Coors asserted as grounds for this termination ABA's "dishonesty" and "violation of state and federal law" in covertly selling beer for resale outside Missouri. ABA filed an action in the district court alleging that its termination was unlawful, and sought a preliminary injunction reinstating it as a Coors' distributor pending the trial of this action. In support of its motion, ABA asserted that its termination would violate an FTC order, federal antitrust laws, and the distributorship agreement between Coors and ABA.

The district court rejected the first two asserted grounds for an injunction, but held that the third did justify preliminary relief. *See ABA Distributors, Inc. v. Adolph Coors Co.*, 496 F.Supp. 1194, 1195 (W.D.Mo.1980). The court accordingly converted into a preliminary injunction its earlier temporary restraining order, under which Coors was to pay to ABA each month a sum sufficient to cover ABA's overhead, so that ABA's organization and physical plant could be maintained. These monthly payments, originally set at $125,000 a month, have been reduced to $77,000. 505 F.Supp. at 831. Despite the monthly accretion of Coors' total payments, ABA's bond has not been increased equally.[1]

On appeal, Coors challenges both the grant and the form of preliminary relief. Coors is particularly dissatisfied with what it views as the insufficient bond posted by ABA. ABA, for its part, supports the grant of preliminary relief but would prefer actual reinstatement as a Coors distributor pending resolution of the dispute over its termination.

Appellate review of a grant of a preliminary injunction focuses on whether the district court abused its discretion or applied the wrong legal standards for issuance of an injunction. *See, e. g., Seniors United for Action v. Ray*, 635 F.2d 746, 748 (8th Cir. 1980), and cases cited there. This Court, sitting *en banc*, has recently clarified

Bradley, Campbell & Carney, Professional Corp., Leo N. Bradley, Earle D. Bellamy, II, Golden, Colo. and Hillix, Brewer, Hoffhaus & Whittaker, Kent E. Whittaker (argued), William D. Calkins, Kansas City, Mo., for Adolph Coors Co.

Harry P. Thomson, Jr. (argued), William E. Quirk, Jennifer A. Gille, Shughart, Thomson & Kilroy, A Professional Corp., Kansas City, Mo., for ABA Distributors, Inc.

Before HEANEY and HENLEY, Circuit Judges, and PECK,* Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

The ultimate issue in this appeal is the propriety of a preliminary injunction under which Coors must make monthly payments to sustain the existence of ABA as a business enterprise.

ABA distributed Coors beer in western Missouri from mid-1978 until March of 1980,

---

* The Honorable John W. Peck, United States Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit sitting by designation.

1. Coors asserts that its totalled payments exceed the posted bond by $1,000,000.

the relevant legal standards. The trial court must consider: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113, 114 (8th Cir. 1981) (*en banc*).

Although he did not have the guidance of this Court's *en banc* opinion, the trial judge applied the proper legal standards and considered all matters legally relevant under the *Dataphase* decision. We cannot, however, agree with the district court's conclusion that ABA has demonstrated irreparable harm should preliminary relief be denied.

The trial court pointed to two sorts of potential irreparable harm to ABA: loss of a unique business enterprise,[2] and loss of the contract right to arbitrate disputes over termination of the distributorship. *See* 496 F.Supp. at 1202–03. A leading case finding irreparable harm in the termination of a dealership is *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197 (2d Cir. 1970), in which Judge Friendly wrote:

> Ford's contention that Semmes failed to show irreparable injury from termination is wholly unpersuasive. Of course, Semmes' past profits would afford a basis for calculating damages for wrongful termination, and no one doubts Ford's ability to respond. But the right to continue a business in which William Semmes had engaged for twenty years and into which his son had recently entered is not measurable entirely in monetary terms; the Semmes want to sell automobiles, not to live on the income from a damages award. *See Madsen v. Chrysler Corp.*, 261 F.Supp. 488, 507 (N.D.Ill.1966), *vacated as moot*, 375 F.2d 773 (7 Cir. 1967). Moreover, they want to continue living. As Judge Goodrich said, a "judgment for

damages acquired years after his franchise has been taken away and his business obliterated is small consolation to one who, as here, has had a Ford franchise" for many years, *Bateman v. Ford Motor Co.*, 302 F.2d 63, 66 (3 Cir. 1962). As against this, the hardship to Ford in continuing the Semmes dealership *pendente lite* was relatively small.

429 F.2d at 1205. It was key to the decision in *Semmes* that the terminated dealership was the product of long entrepreneurial stewardship that the plaintiffs wished to continue. One later Second Circuit case distinguished *Semmes* on the ground that the goodwill acquired over only two years is readily compensated by money damages. *See Jack Kahn Music Co., Inc. v. Baldwin Piano & Organ Co.*, 604 F.2d 755, 761–63 (2d Cir. 1979). *Cf. Paschall, supra*, 441 F.Supp. at 358–59 (injunction ordered short continuation of defendant's practice of 97 years).

█ Thus, true injury of the *Semmes* type is improper deprivation of an inveterate enterprise that, but for the defendant's challenged action, could be expected to continue. Of this sort of potential injury, ABA has made no showing, and the district court has made no finding[3]. Thus, in weighing possible harms to the litigants in deciding whether to grant preliminary relief, the district court accorded undue weight to a harm that ABA may well eventually suffer despite the grant of preliminary relief. The rubric of "success on the merits" is perhaps better invoked here. If the ultimate question of continuation of the distributorship is the backdrop for the decision to grant preliminary relief, ABA has made no showing of likelihood of success on the merits. Since the equities are not "otherwise strongly in [its] favor," a lesser showing will not support the preliminary relief granted to ABA. *See Dataphase, supra*, 640 F.2d at 113.

The district court may have based the grant of injunctive relief on the conclusion that ABA is likely to succeed in proving

---

**2.** The trial court described this harm by reference to the decision in *Paschall v. Kansas City Star Co.*, 441 F.Supp. 349, 357–59 (W.D.Mo. 1977).

**3.** On the contrary, the district court was "not at all satisfied that plaintiff, on the merits, would ever be entitled to full reinstatement as a distributor for the defendant on any kind of permanent basis...." 496 F.Supp. at 1204.

that Coors' attempt at termination did not meet the cause and notice of requirements of the contract and, possibly, of Missouri law.[4] The proper remedy for such violations would be an order for ABA to comply with the procedural requirements of the contract or Missouri law. The present order may well have the effect of extending to ABA the benefits of the distributorship beyond the times guaranteed by either the agreement or statute. *Compare Carlo C. Gelardi Corp. v. Miller Brewing Co.*, 421 F.Supp. 233, 236 (D.N.J.1976) (injunction ordering compliance with notice requirement of local law granted) *with Carlo C. Gelardi Corp. v. Miller Brewing Co.*, 421 F.Supp. 237, 248–49 (D.N.J.1976) (*Gelardi II*) (further injunctive relief denied, no showing of likelihood of success on the merits).

The second sort of potential irreparable harm to ABA found by the district court was ABA's loss of arbitration rights under the distributorship agreement. See 496 F.Supp. at 1202. ABA visited this harm upon itself. It has pointed to nothing in the already massive record in this case to indicate that it did anything to invoke the mandatory arbitration clause[5] of the distributorship agreement. On the contrary, ABA beat a hasty path to the federal courthouse, filing its complaint less than a week after its termination as a distributor. Although Coors timely raised ABA's failure to arbitrate as an affirmative defense, none of

ABA's amended complaints seeks to compel arbitration or to preserve the status quo pending arbitration. *Cf. Guinness-Harp Corp. v. Jos. Schlitz Brewing Co.*, 613 F.2d 468, 470–72 (2d Cir. 1980) (injunction ordering continuance of distributorship seen as specific enforcement of agreement to arbitrate disputes over termination).

The trial court itself concluded that the harms threatening ABA from Coors' supposed violations of an FTC order and federal antitrust statutes do not warrant preliminary relief. We agree. Accordingly, for these reasons, and those stated above, the preliminary injunction is dissolved, and the case remanded for action consistent with this opinion. We leave to the discretion of the trial court the handling, pending the resolution of the trial of this case, of the payments made to date under the preliminary injunction.

An appropriate final note is one struck in another case involving beer and money:

This court does not believe the temporary injunction should approach "permanency" simply because of delays in getting to trial and suggests that the parties should try to expedite the case in the district court. Perhaps the time spent on this appeal by both sides would have been enough to get the case to trial by now.

*Beverage Distributors, Inc. v. Olympia Brewing Co.*, 395 F.2d 850, 851 (9th Cir. 1968) (per curiam).

In the event that Coors shall serve written Notice of Termination pursuant to paragraph IX(2) herein upon Distributor as set forth hereinabove, Distributor may, within ten days thereafter, serve a written notice upon Coors which shall demand arbitration of whether proper cause as set forth in the said Notice of Termination existed. Such arbitration shall be conducted in accordance with the published Rules and Procedures of the American Arbitration Association, a copy of which are attached hereto, and applicable Colorado Rules of Civil Procedure, all as herein limited.

The parties hereto agree that arbitration shall be the sole remedy of either party against the other party as to whether the termination was for the cause specified in the notice, subject to the right of either party to judicial review of the Arbitration Award.

**4.** The district court noted that ABA's motion presented "questions related to the notice of termination to which plaintiff may be entitled under the Missouri Franchise Act...." 496 F.Supp. at 1203. No finding relative to the likelihood of resolving these questions favorably to ABA was made.

The parties have not argued or briefed the details of the application of the Missouri Act. We note, however, that the Act by its terms protects only wholesalers licensed to sell "spirituous liquor and wine containing alcohol in excess of five percent by weight...." R.S.Mo. § 407.400. Beer is not a spirituous liquor. *See State v. Watts*, 101 Mo.App. 658, 74 S.W. 377 (1903). It does not strain judicial notice to note that beer is not wine. Therefore, whether ABA may properly invoke the protections of the Missouri Franchise Act is open to question.

**5.** Article XV of the distributorship agreement provides in relevant part:

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. In my view, the district court did not abuse its discretion in granting a preliminary injunction. To the contrary, the relief granted was fully justified by the record.

First, the equities are strongly in ABA's favor. It spent $1.4 million in capital investments, trucks and equipment, warehouse leasing, and the building of accounts, clientele and goodwill. ABA's business is successful and ongoing. Coors has benefited, is benefiting and will continue to benefit in the future from ABA's investments and efforts.

Second, ABA has, for the reasons stated in detail by the trial court, a likelihood of success on the merits. At the very least, it seems likely that it will obtain a court order temporarily restoring its franchise. It will then be able to transfer the franchise to another company and recover its investment and goodwill in the process. While Coors must approve the transferee, it obviously cannot unreasonably withhold approval.[1]

Third, ABA has shown that it is threatened with irreparable harm. It not only stands to lose the good will that it has built and to suffer damage to its reputation, but it also stands to lose the right to sell the distributorship as an ongoing business. *See Stenberg v. Cheker Oil Co.*, 573 F.2d 921 (6th Cir. 1978); *Milsen Co. v. Southland Corp.*, 454 F.2d 363 (7th Cir. 1971).

Fourth, the relief given by the district court is carefully tailored to the circumstances. The order does not put ABA back in business; rather, it permits Coors to operate the ABA franchise by paying ABA its business expenses of $77,000 per month. This is a very modest sum when one considers that Coors is profiting from the operation of the business, that the sum paid only permits ABA to maintain its business so that if it prevails in the action, it will be able to return to its business, and that ABA has posted a $450,000 bond.[2]

I believe the majority's reliance on *Jack Kahn Music v. Baldwin Piano & Organ*, 604 F.2d 755 (2d Cir. 1979), is misplaced. There, the Court emphasized that the effect of the injunction would be to freeze Baldwin into an intimate and continuous relationship with a dealer it no longer wished to be associated with. Here, Coors is back in control of the distributorship, and the only impact of the temporary injunction is to permit the ABA facility to be maintained pending the final disposition of this action.

I do agree with the majority that the case should be promptly tried on remand. I am, moreover, confident that the district court will do so.

---

1. For other cases involving Coors' efforts to terminate distributorships, *see, e. g., Adolph Coors Co. v. FTC*, 497 F.2d 1178 (10th Cir. 1974), *cert. denied*, 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975); *R. E. Spriggs Co. v. Adolph Coors Co.*, 94 Cal.App.3d 419, 156 Cal. Rptr. 738 (1979), *cert. denied*, 444 U.S. 1076, 100 S.Ct. 1024, 62 L.Ed.2d 758 (1980).

2. The trial court found that "most of the delay in processing the equitable issues presented in regard to defendant Coors' *ex parte* termination of plaintiff's distributorship may have been occasioned by positions which defendant Coors has elected to take."